IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DESHAY BISHOP,                          *
                                        *
        Plaintiff,                      *
                                        *
vs.                                     *        CIVIL ACTION NO. 15-00500-B
                                        *
NANCY BERRYHILL,[1]                     *
Acting Commissioner of Social           *
Security,                               *
                                        *
        Defendant.                      *

ORDER

Plaintiff Deshay Bishop (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for childhood disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.,* and 1381, *et seq.* On December 5, 2016, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.   Procedural History[2]

Plaintiff filed his applications for childhood disability insurance benefits and supplemental security income on January 31, 2012, alleging disability beginning on March 6, 2006, based on "seizures." (Tr. 244, 253, 278, 283). Plaintiff's application was denied and upon timely request, he was granted administrative hearings on July 17, 2013, and on February 28, 2014, before Administrative Law Judge Thomas M. Muth, II (hereinafter "ALJ"). (Id. at 49, 73). Plaintiff attended the hearings with his counsel and provided testimony related to his claims. (Id. at 53, 79). A vocational expert ("VE") also appeared at each hearing and provided testimony. (Id. at 69, 86). On March 28, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 30-41). The Appeals Council denied Plaintiff's request for review on August 3, 2015. (Id. at 1). Therefore, the ALJ's decision dated March 28, 2014, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF, not the page numbers assigned by the Agency.

timely filed the present civil action.  (Doc. 1).  The parties waived oral argument on December 5, 2016 (Doc. 16) and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Issues on Appeal

1. **Whether the ALJ erred in failing to give "considerable" weight to the opinions of Plaintiff's treating neurologist, Dr. Abdel Kasmia, M.D.?**

2. **Whether the ALJ erred in evaluating the testimony of Plaintiff and his mother?**

3. **Whether the ALJ erred in failing to rely on the vocational experts' responses to hypotheticals that assumed restrictions in excess of the RFC?**

## III.  Factual Background

Plaintiff was born on March 11, 1988, and was twenty-three years of age at the time that he filed his applications for benefits.  (Tr. 244, 253, 278).  Plaintiff alleges that he became disabled on March 6, 2006, five days before his eighteenth birthday, as a result of frequent seizures.  (Id. at 278, 283).

Following graduation from high school in 2006, Plaintiff attended college as a full time student and earned an associate's degree in computer science in 2009.  (Id. at 54, 79).  Plaintiff has never worked, except while in college when

3

he worked part-time as an office assistant. (Id. at 54-55, 79, 283). In his Disability Report submitted to the Agency and at his administrative hearings, Plaintiff stated that he is not able to work because of seizures, which cause him to bite his tongue and become incontinent and leave him feeling fatigued and unable to concentrate. (Id. at 59, 80-81, 283).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V.   **Statutory And Regulatory Framework**

This matter involves an application for childhood disability insurance benefits and for supplemental security income. An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920. The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the

claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v.

6

*Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Francis v. Heckler*, 749 F.2d 1562, 1564 (11th Cir. 1985)).

Because Plaintiff is over eighteen years of age and seeks child's benefits under the Social Security Act, he must also establish that (1) he is dependent on an insured parent who is entitled to old-age or disability benefits or has died; (2) he is unmarried; and (3) at the time of filing, he was under age 18, or age 18 or older and has a disability that began before he became 22 years old. *See* *Bailey v. Colvin*, 2016 U.S. Dist. LEXIS 171783, *6, 2016 WL 7210404, *2 (N.D. Ala. Dec. 13, 2016) (citing 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350). The Commissioner evaluates a claim for adult child disability benefits under the same standards generally applicable to adults applying on their own wage records by employing the five-step evaluation process listed above. *Id.* (citing 20 C.F.R. §§ 404.1505(a), 404.1520(a)(4)(i)-(v)).

**VI. Discussion**

> **A. The ALJ did not err in failing to give "considerable" weight to the opinions of Plaintiff's treating neurologist, Dr. Abdel Kasmia, M.D.**

In his brief, Plaintiff argues that the ALJ erred in failing to give "considerable" weight to the opinions of his treating neurologist, Dr. Abdel Kasmia, M.D. (Doc. 11 at 2). Because of this, Plaintiff argues, the RFC is not supported by

substantial evidence.  Having reviewed the record at length, the Court finds that Plaintiff's argument is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians.  In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so.  See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error.  See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so.  Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician.  Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).  An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological

consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In this case, the ALJ found that Plaintiff has the severe

impairments of seizure disorder, depression, asthma, obesity, and personality disorder. (Tr. 32). The ALJ further found that, despite Plaintiff's severe impairments, he has the residual functional capacity to perform a range of light work, subject to the following restrictions: Plaintiff "can stand and/or walk four hours, no more than one hour at a time, and sit[] six hours. He can perform frequent pushing and/or pulling with the upper extremities, bilaterally, and frequent pushing and/or pulling with the lower extremities, bilaterally. He can perform frequent[] balancing. He can occasionally stoop, occasionally kneel, occasionally crouch, occasionally crawl, and occasionally climb ramps and stairs. He can perform no climbing of ladders, ropes or scaffolds. The claimant can frequently reach, bilaterally, and frequently handle bilaterally. He can continuously finger, bilaterally, and continuously feel, bilaterally. He can tolerate occasional exposure to pulmonary irritants. He must avoid all exposure to unprotected heights and avoid all exposure to dangerous machinery. He cannot work in close proximity to unprotected bodies of water. He cannot operate motor vehicles. He would have one unplanned absence per month. He can perform simple, routine tasks with no more than simple, short instructions and simple work-related decisions and few work place changes. He can perform work involving non-transactional interaction with the public. He can sustain

concentration and attention for two-hour periods with customary breaks." (Id. at 34). The ALJ found that Plaintiff has no past relevant work; however, relying on the testimony of the vocational expert, the ALJ concluded that Plaintiff can perform the jobs of kitchen helper, laundry worker, and mail clerk, all unskilled and light. (Id. at 39-40).

In support of the RFC, the ALJ relied on evidence that Plaintiff had his first seizure in March 2006, when he was eighteen years old. (Id. at 408). An MRI of his brain conducted after the seizure was normal. (Id. at 428). On March 7, 2006, Plaintiff began treatment with Dr. Abdel Kasmia. (Id. at 645). At that time, Dr. Kasmia prescribed no treatment. (Id.). Plaintiff was hospitalized on May 6, 2006, after complaining that he had a strange feeling in his head. (Id. at 429-30). A CT scan of his brain taken at that time revealed nothing remarkable. (Id. at 408, 434).

The following year, on July 9, 2007, Plaintiff reported a seizure and was again hospitalized. A CT scan conducted on that date was also normal. (Id. at 403). While in the hospital, Plaintiff was prescribed a seizure medication, Dilantin. (Id. at 398). At a follow up visit, Dr. Kasmia diagnosed Plaintiff with seizure disorder and continued to prescribe Dilantin. (Id. at 646). On October 16, 2007, Dr. Kasmia noted that Plaintiff was "stable" and had not experienced any further symptoms. (Id.

at 647).   Likewise, in January 2008, Dr. Kasmia noted that Plaintiff was "doing well" on Dilantin "with no side effects" and no reoccurrence of seizures.   (Id. at 648).   In April, August, September, and November of 2008, Plaintiff again experienced seizures, and Dr. Kasmia, as well as Plaintiff's other treatment providers, noted that he was non-compliant with his medication.[4]  (Id. at 453, 459-60, 463, 649, 703).

From 2009 through 2012, Plaintiff continued to report seizures, and his treatment providers continued to note low Dilantin levels.   (Id. at 463, 519, 521, 603, 605, 639, 650, 652, 687-88, 691, 695-96, 699, 701).   His examination findings were consistently normal during that time.   (Id.).   On October 16, 2012, Dr. Kasmia prescribed Keppra in addition to Dilantin. (Id. at 652).   On December 4, 2012, Dr. Kasmia noted "no side effects" from the medication.   (Id. at 654).

In 2013, Plaintiff and his mother reported that his seizures were better, with a frequency on average of about one

---

[4] The generally accepted therapeutic range of Dilantin (phenytoin) is 10 to 20 mcg/mL.   See https://www.drugs.com/dosage/phenytoin .html.   On November 4, 2008, Plaintiff was taken by ambulance to the emergency room following a seizure, and the treating physician noted "medical noncompliance," Dilantin level "0." (Tr. 459-60, 463).   On April 21, 2009, Plaintiff presented to the Atmore Family Medicine Clinic, and Dr. Yoder noted that Plaintiff's Dilantin level was less than one.   (Id. at 701).   On March 2, 2010, Dr. Kasmia noted that Plaintiff "had a history of noncompliance with his medication and his level had been low several occasions."   (Id. at 650).

per month.  (Id. at 738, 743).   On May 28, 2013, Dr. Kasmia noted that Plaintiff's medication levels were low (less than seven), despite the fact that his prescriptions had been increased.[5]  (Id. at 743).

On that same date, May 28, 2013, Dr. Kasmia completed a "Seizures Residual Functional Capacity Questionnaire" stating that Plaintiff had been a patient since 2006, that Plaintiff was being treated for a "seizure disorder" which caused unspecified/generalized tonic/clonic seizures resulting in loss of consciousness lasting two-three minutes, incontinence, and confusion following the seizure; that Plaintiff had one seizure in December 2012, one in January 2013, and one in February 2013; and that during a seizure it would be necessary to remove glasses, loosen tight clothing, clear the area of hard or sharp objects, and turn the patient on the side to allow saliva to drain from the mouth.  (Id. at 735-37).   Dr. Kasmia further stated that Plaintiff is compliant with his medication.  (Id. at 736).   He noted no medication side effects.  (Id.).   In addition, Dr. Kasmia opined that Plaintiff's seizures were

_____

[5] On occasion from 2008 through 2012, Plaintiff's Dilantin levels were within the therapeutic range, and on one occasion it was high.  (Tr. 509, 596, 623, 682, 708).  Nevertheless, as stated, the record is replete with references from 2007 to 2013 regarding low Dilantin levels and non-compliance with medication.  (Id. at 462-63, 493, 517, 521, 525, 599, 605, 642, 649-50, 663-64, 672, 688, 691, 699, 701, 712, 744, 774).

"likely to disrupt the work of co-workers," that Plaintiff would need "more supervision at work than an unimpaired worker," that Plaintiff could not work at heights, with power machines, or motor vehicles but could take a bus alone; that Plaintiff would sometimes need to take unscheduled breaks during an eight-hour working day; and that Plaintiff was incapable of tolerating even a low stress job. (Id. at 736-37).

On December 10, 2013, Plaintiff reported seizure frequency of approximately once or twice per month. (Id. at 772). Plaintiff's family member reported that he was "much better controlled" on his current medication (Keppra and Dilantin) "tha[n] ever." (Id.). On that same date, Dr. Kasmia's records reflect that Plaintiff's Dilantin level was extremely low (1.0). (Id. at 774).

As Plaintiff points out, the ALJ assigned limited weight to some of Dr. Kasmia's opinions in the Seizures Residual Functional Capacity Questionnaire, finding that some of the opinions were "completely at odds with his own lengthy treating and office notes, reports and the repeated lab studies." (Id. at 38-39). The record confirms the ALJ's finding that Dr. Kasmia (as well as other treatment providers) documented Plaintiff's routine non-compliance with medication and low levels of Dilantin; yet, in the RFC questionnaire, Dr. Kasmia opined that Plaintiff was compliant with his medication. (Id.

at 462, 493, 649-50, 735).  In addition, as the ALJ found, Dr.
Kasmia failed to explain why Plaintiff's Dilantin levels were
below the therapeutic level (if he was compliant with his
medication), despite being asked to do so on the questionnaire.
(Id. at 736).  Notably, the ALJ credited Dr. Kasmia's opinions
that Plaintiff's seizures were likely to disrupt his co-workers,
that he would require more supervision, and that he could not
work with machinery or drive.  (Id. at 38).  The ALJ
accommodated those limitations by including a restriction in the
RFC that Plaintiff "must avoid all exposure to unprotected
heights and avoid all exposure to dangerous machinery.  He
cannot work in close proximity to unprotected bodies of water.
He cannot operate motor vehicles. . . . He can perform simple,
routine tasks with no more than simple, short instructions and
simple work-related decisions and few work place changes.  He
can perform work involving non-transactional interaction with
the public." (Id. at 34).

Plaintiff also correctly points out that the ALJ
erroneously stated that Dr. Kasmia opined that Plaintiff could
tolerate "moderate" stress.  (Id. at 38).  In fact, Dr. Kasmia
opined in the RFC Questionnaire that Plaintiff could not
tolerate even low stress jobs.  (Id. at 737).  However, the
Court finds that this opinion by Dr. Kasmia is inconsistent with
the substantial evidence in this case.  Specifically,

Plaintiff's treatment records reflect routinely normal examination findings and test results (id. at 403, 414, 473-75, 637, 646, 652, 654, 656, 658, 738, 743, 772), as well as repeated non-compliance with the medication regimen, and low medication levels. (Id. at 462, 493, 521, 649-50). In addition, Dr. Kasmia's treatment records reflect that, when taking his medication, Plaintiff "d[id] well" without side effects. (Id. at 648, 772). Also, consultative psychologist, Dr. Robert Defrancisco, Ph.D., examined Plaintiff in 2009, and found that his concentration, persistence, pace, memory, orientation, and affect were "normal," and Dr. Defrancisco opined that Plaintiff had no psychiatric problems, no limitations, and no restriction of activities. (Id. at 473-75). In addition, consultative neurologist, Dr. Todd Elmore, M.D., examined Plaintiff in 2012 and opined that his Dilantin levels were low despite being prescribed a "pretty high dose;" that "[i]n between seizures he is fine;" that his neurologic examination findings were unremarkable; that he could work, particularly a sedentary job, as long as he did not drive or work around hazardous/dangerous conditions and as long as the work accommodated missing one to two days a month on an unscheduled basis. (Id. at 636-37).

As the ALJ found, the severity of limitations expressed by Dr. Kasmia in the RFC Questionnaire is inconsistent with the

16

substantial evidence in this case.[6]  Therefore, the ALJ had good cause to discredit those opinions.[7]

In addition, the Court finds, based on the evidence detailed above, that substantial evidence supports the ALJ's finding that Plaintiff has the residual functional capacity to perform a range of light work, with the stated restrictions. (Tr. 34).  Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations.  See 20 C.F.R. § 404.1545.  Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence.  See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.

---

[6] It is also worth noting that Plaintiff has alleged disability beginning March 6, 2006, after which he obtained a degree in 2009 in computer science, attending college full time and missing class only once every other month.  (Tr. 54, 57, 278).

[7] The Court is also aware of Dr. William Harigel's letter dated February 28, 2014 (from Atmore Family Medicine Clinic) opining that Plaintiff's seizures have been difficult to control and manage, that his condition has affected his quality of life (causing him anxiety and embarrassment from incontinence during the seizure), and that "it has affected his overall quality of life and ability to function in society." (Tr. 775).  The Court finds that Dr. Harigel's opinions do not take into consideration the evidence of non-compliance in this case and that the limitations expressed by Dr. Harigel do not, in any event, exceed the requirements of the RFC.

1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

In formulating Plaintiff's RFC, the ALJ discussed in detail the medical evidence and took into account that Plaintiff has a history of seizures and should not drive or operate heavy machinery. (Tr. 39). The ALJ also correctly observed that Plaintiff is functioning at a level which allowed him to attend college full time and obtain a degree in computer science. In the RFC, the ALJ accommodated the limitations imposed by Plaintiff's seizure activity by including restrictions to simple, routine tasks involving non-transactional interaction with the public simple and requiring that the work allow one unplanned absence per month.[8] (Id. at 34).

Based on the totality of the record, the Court finds that substantial evidence supports the ALJ's RFC for a range of light work, with the stated restrictions, and that these restrictions

---

[8] As discussed herein, this limitation is supported by statements from Plaintiff, his mother, Dr. Kasmia, and Dr. Defrancisco that the frequency of Plaintiff's seizure activity is approximately one per month. (Tr. 78, 473, 699, 735, 738, 743).

fully accommodate Plaintiff's physical and mental impairments. In addition, as stated above, the Court also finds that substantial evidence supports the ALJ's determination of weight to be given to the expert opinions in this case. For these reasons, Plaintiff's claim that the RFC is not supported by substantial evidence is without merit.

### B. The ALJ did not err in evaluating the testimony of Plaintiff and his mother.

Plaintiff next argues that the ALJ erred in failing to consider an updated seizure calendar completed by Plaintiff's mother, dated August 1, 2013 to February 28, 2014, that was made a part of the record at the supplemental hearing on February 28, 2014. (Doc. 11 at 16). Plaintiff also argues that the ALJ erred in evaluating the credibility of his testimony and his mother's testimony regarding the side effects of his medication and the length of time it takes to recover from a seizure. (Id. at 17).

First, with respect to the calendar, Plaintiff argues that, although the calendar was admitted into evidence at the supplemental hearing, the ALJ did not address the calendar in his decision, nor did he attach it as an exhibit to his decision. According to Plaintiff, the calendar "provided documentation of Plaintiff's seizures for the latter part of 2013 through the date of the hearing, documenting that he had

suffered several additional seizures since the time of his first hearing in July of 2013." (Id. at 16).

Plaintiff is correct that the ALJ did not specifically refer to the calendar in his decision or attach it as an exhibit to his decision. However, a review of the seizure calendar submitted at the supplemental hearing on February 28, 2014, shows that Plaintiff had seizures on August 17, 2013, September 30, 2013, October 22, 2013, November 29, 2013, December 6, 2013, January 20, 2014, February 10, 2014, and February 20, 2014. (Tr. 380-86). While the calendar reflects one instance of two seizures in the same month, the frequency of seizures reflected in the calendar is still consistent with the ALJ's finding of approximately one seizure per month, which he accommodated in the RFC. (Id. at 34, 52, 57, 473, 699, 735). Even Plaintiff's attorney acknowledged at the supplemental hearing that the calendar showed a frequency of approximately one seizure per month. (Id. at 77-78).

In addition, Plaintiff argues that the ALJ failed to properly consider his testimony and that of his mother that the high doses of anti-seizure medication cause him to suffer extreme fatigue and that it takes him several days to recover after having a seizure. (Doc. 11 at 17). Plaintiff claims that the ALJ rejected this testimony without giving specific reasons for doing so. The Court disagrees.

When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician or other persons, and evidence of how the subjective symptoms affect the claimant's daily activities and ability to work.  20 C.F.R. § 416.929(a).  In a case where a claimant attempts to establish disability through his or her own testimony concerning pain or other subjective symptoms, a three-part standard applies.  That standard requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain [or other subjective symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other subjective symptoms]." Hubbard v. Commissioner of Soc. Sec., 348 Fed. Appx. 551, 554 (11th Cir. 2009) (unpublished) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  The Social Security regulations provide:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as

> consistent with the medical signs and
> laboratory findings), would lead to a
> conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).  "A claimant's subjective testimony supported by medical evidence that satisfies the . . . standard is itself sufficient to support a finding of disability."  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).

When evaluating a claim based on disabling subjective symptoms, the ALJ must consider all of the claimant's statements about his or her symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  See 20 C.F.R. § 404.1528.  If an ALJ decides not to credit a claimant's testimony about his or her subjective symptoms, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding.  Strickland v. Commissioner of Soc. Sec., 516 Fed. Appx. 829, 832 (11th Cir. 2013) (unpublished) (citing Foote, 67 F.3d at 1562).  Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true.  Holt, 921 F.2d at 1223.

The Eleventh Circuit has held that the determination of whether objective medical impairments could reasonably be expected to produce subjective symptoms is a factual question to

be made by the Secretary and, therefore, "subject only to
limited review in the courts to ensure that the finding is
supported by substantial evidence." Hand v. Heckler, 761 F.2d
1545, 1549 (11th Cir. 1985), *vacated on other grounds and
reinstated sub nom.*, Hand v. Bowen, 793 F.2d 275 (11th Cir.
1986). A reviewing court will not disturb a clearly articulated
finding related to a claimant's claims of disabling subjective
symptoms, with substantial supporting evidence in the record.
See Nye v. Commissioner of Social Sec., 524 Fed. Appx. 538, 543
(11th Cir. 2013) (unpublished).

    "Regulation 96-7p and 20 C.F.R. §§ 404.1529(c)(4) and
416.929(c)(4) require the ALJ to consider the consistency of
subjective complaints." Lindsey v. Colvin, 2016 U.S. Dist.
LEXIS 129547 *12-13, 2016 WL 5253219, *5 (N.D. Ala. Sept. 22,
2016) (quoting Majkut v. Commissioner of Soc. Sec., 394 Fed.
Appx. 660, 663 (11th Cir. 2010)). SSR 16-3p is a new ruling
which replaces SSR 96-7p and provides as follows: "[w]e are
eliminating the use of the term 'credibility' from our sub-
regulatory policy, as our regulations do not use this term. In
doing so, we clarify that subjective symptom evaluation is not
an examination of an individual's character. Instead, we will
more closely follow our regulatory language regarding symptom
evaluation." SSR 16-3p, 2016 SSR LEXIS 42016, WL 1119029, *1.
The effect of the new ruling has been described as follows:

Both SSR 96-7p and SSR 16-13p direct that evaluation of a claimant's subjective symptoms shall consider all evidence in the record. Both Rulings also incorporate the regulations, 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), that identify factors to be considered in evaluating the intensity, persistence and functionally-limiting effects of the symptoms, including a claimant's daily activities; the nature, duration, frequency and intensity of her symptoms; precipitating and aggravating factors; and the type of medication and other treatment or measures used for the relief of pain and other symptoms, *i.e.*, the familiar factors identified in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). But while SSR 96-7p expressly provided that a credibility finding was required to be made under those regulations, SSR 16-3p expressly provides that use of the term "credibility" was being eliminated because the SSA regulations did not use it. 81 F.R. at 14167. SSR 16-3p further provides: In [eliminating reference to "credibility"], we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation. Id. SSR 16-3p also expressly provides that the ALJ may not make conclusory statements about having considered the symptoms, or merely recite the factors described in the regulations. Rather, the determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent, and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms. Id. at 14171.

Martsolf v. Colvin, 2017 U.S. Dist. LEXIS 2748, *14-15, 2017 WL

77424, *5 (W.D. Mo. Jan. 9, 2017); see also McVey v.

Commissioner of Soc. Sec., 2016 U.S. Dist. LEXIS 93884, *14, 2016 WL 3901385, *5 (M.D. Fla. July 19, 2016) (holding that ALJ erred in basing her credibility determination on the fact that the claimant had made inconsistent statements concerning his sobriety, a matter which was unrelated to his impairment); Lindsey, 2016 U.S. Dist. LEXIS 129547 at *13, 2016 WL 5253219 at *5 ("[i]nconsistencies and conflicts in the record evidence and the claimant's statements about her symptoms may provide a basis for discounting the extent of claimant's statements.").

Having reviewed the record at length, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff's testimony, and that of his mother, as detailed herein, was inconsistent with the objective medical evidence in the case. The record shows that both the Plaintiff and his mother testified that his medication renders him a "zombie" and that he sleeps essentially all day long most days. (Tr. 65-66, 82). In addition, Plaintiff testified that, following a seizure, he feels drained and fatigued, and it takes him approximately two to four days to recover. He also testified that he now has problems with memory and concentration because of his seizures. (Id. at 80-82).

Contrary to Plaintiff's claim that the ALJ failed to consider this evidence, the record shows that the ALJ expressly considered this testimony and found it to be inconsistent with

the substantial medical evidence in the case. (Id. at 35-36, 39). The ALJ stated: "[Plaintiff's] testimony and that of his mother were both compelling, but the limitations portrayed were simply more than the clinical objective record supports; and, the obvious history of non-compliance did little to enhance the credibility of the allegations." (Id. at 39).

Indeed, the record reflects that Plaintiff tolerated his medication without significant side effects, as evidenced by Dr. Kasmia's treatment notes dated December 4, 2012, which show that Plaintiff was taking Dilantin and Keppra and "ha[d] no side effects" (id. at 654), as well as Dr. Kasmia's treatment notes dated January 22, 2008, which likewise show "doing well," "no side effects." (Id. at 648). Even in his May 28, 2013, RFC Questionnaire, Dr. Kasmia failed to list any negative side effects experienced by Plaintiff as a result of his medication, despite being specifically requested to provide that information if applicable. (Id. at 736).

Also, contrary to Plaintiff's claim that his seizures have had long term effects on his concentration and memory, Dr. Defrancisco's examination findings on February 27, 2009, showed completely normal concentration, persistence, pace, and memory, despite Plaintiff's report of seizures approximately once a

month.[9]  (Id. at 473-475).  While the record reflects notations by Dr. Kasmia of reported memory loss by Plaintiff, Dr. Kasmia's cognitive examination findings, even as late as December 2013, were normal.  (Id. at 646, 652, 654, 743, 772).  In any event, assuming memory loss as alleged, Plaintiff has failed to show that any limitations caused by his memory loss exceed the RFC, which includes an accommodation for simple, routine work.

Last, with respect to Plaintiff's claim that it takes him one to two days to recover from a seizure, there are no such reports in his medical records, despite the fact that he has reported many other details about his seizures over the years. To the contrary, although Plaintiff suffered from seizures while attending college full-time, he testified that he missed class only about once every other month.  (Id. at 51).  This testimony belies his claim that he it takes him two to four days to recover after having a seizure.

Based on the foregoing, the Court finds that Plaintiff's claim that the ALJ erred in failing to consider the seizure calendar submitted at the supplemental hearing and erred in evaluating Plaintiff's testimony and that of his mother regarding the side effects of his medication, the recovery time of his seizures, and the effects of the seizures on his

_____

[9] MRI's and CT scans of Plaintiff's brain from 2006 to 2012 also have been completely normal.  (Tr. 391, 403, 656, 658).

concentration and memory is without merit.

**C. The ALJ did not err in failing to rely on the vocational experts' responses to hypotheticals that assumed restrictions in excess of the RFC.**

Next, Plaintiff argues that the ALJ erred in failing to rely on the vocational experts' responses to hypotheticals containing restrictions in excess of the RFC, *i.e.*, hypotheticals that assumed *two* unplanned absences from work per month due to Plaintiff's seizures, as opposed to *one* unplanned absence per month, as included in the RFC. (Doc. 11 at 18). Plaintiff states that the evidence supports the more restrictive hypotheticals and that the ALJ erred in not relying on the responses to those hypotheticals. Plaintiff's argument is misplaced.

First, the ALJ's findings related to the testimony of Plaintiff and his mother that he experiences seizures more frequently than once a month and is affected by those seizures for days has been discussed in detail and will not be repeated here. The Court is satisfied that, for the reasons previously stated, substantial evidence supports the ALJ's finding that Plaintiff could be expected to have one unplanned absence per month. (Id. at 57, 78, 473, 699, 735, 738, 743) (emphasis added). That being established, when presented with hypotheticals that assumed one unplanned absence per month, both

vocational experts testified that there would be jobs that Plaintiff could perform. (Id. at 70, 89-90).

Moreover, while Plaintiff is correct that the vocational expert at the first hearing testified that there would be no work available for Plaintiff if he assumed *two* unplanned absences per month (Tr. 71), Plaintiff fails to mention that the second vocational expert testified that, even with *two* unplanned absences per month, there would still be jobs that Plaintiff could perform. (Id. at 91). The second vocational expert testified that, under such circumstances, Plaintiff simply would have to produce a medical excuse. (Id.).

Because substantial evidence supports the ALJ's hypothetical limited to one unplanned absence per month, and because the second vocational expert testified that even with two unplanned absences per month, there still would be jobs that Plaintiff could perform, the Court finds that Plaintiff's argument is without merit.

## VII.  Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for childhood disability insurance benefits and supplemental security income be **AFFIRMED.**

**DONE** this **27th** day of **March, 2017.**

/s/ SONJA F. BIVINS
_____
**UNITED STATES MAGISTRATE JUDGE**
